IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS STEWART II, et al.          :          CIVIL ACTION
                                   :
              v.                   :
                                   :
PEMBERTON TOWNSHIP, et al.         :          NO. 14-6810

MEMORANDUM

Bartle, J.                                    August 26, 2020

Plaintiffs are 32 law enforcement officers[1] who bring this action against defendants Pemberton Township in Burlington County, New Jersey ("Township") and Mayor David A. Patriarca, in his official capacity only ("defendants") alleging a violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and retaliation.  Plaintiffs, who at the time were all employed by the Township as members of its Police Department, allege that defendants failed to pay them overtime wages for pre and post shift work between November 2011 and October 2014 and then retaliated against them after they filed their initial

_____

[1]    Plaintiffs in this action are:  Thomas Stewart II, Peter Delagraza, Michael Geibel, Shannon Fallen, Robert A. Shinn, Jason Luis, Arthur H. Shinn, John Hall, Daniel Matthews, Anthony Luster, Wayne Davis, Vincent Cestare, Jason M. Gant, Michael C. Brewer, Bruce Phillips, Sean Smith, Shannon Lagaff, Thomas Lucas, Edward N. White, Andre Byrd, David Geibel, Perry J. Doyle, Robert Hood, Kenneth M. Volk, John P. Laffan, Johnathan R. Glass, Shaun Meyers, Michael Bennett, David Sawyer, Charles Bennett, Stephen Price, and Justin Kreig.

complaint in this court on October 30, 2014.[2]  Before the Court
is the motion of defendants for summary judgment under Rule 56
of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A dispute is genuine if the evidence is such that a
reasonable factfinder could return a verdict for the nonmoving
party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986).  "The mere existence of a scintilla of evidence in
support of the [nonmoving party]'s position will be
insufficient; there must be evidence on which the jury could
reasonably find for [that party]."  Id. at 252.  We view the
facts and draw all inferences in favor of the nonmoving party.
See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357
(3d Cir. 2004).

II

The following facts are undisputed.  Plaintiffs were
all law enforcement officers with the Township Police

---

[2]    Plaintiffs are now on their fourth amended complaint.  See
Doc. # 127.

-2-

Department.[3]  They were also members of the Policemen's
Benevolent Association Local 260 (the "PBA").  The PBA and the
Township entered into two successive collective negotiation
agreements ("CNA") which set the terms and conditions of
plaintiffs' employment.  The first applicable CNA was in effect
as of January 1, 2010 through December 31, 2013 and the second
CNA from January 1, 2014 through December 31, 2017.  The CNAs
included a "grievance and arbitration procedure concerning the
improper application, interpretation or violation of [CNA] or
administrative policies and practices."

    The Township has maintained a timeclock[4] policy since
June 10, 2010, prohibiting pre and post shift work.  It states,
in relevant part:

> Employees are required to 'clock in' and
> 'clock out' at their scheduled times.
>
> As a convenience to employees, employees may
> clock in up to 7 minutes prior to the start
> of their scheduled work time. However,
> employees shall not engage in any work
> during that time. In such cases, the
> employee will not be compensated for the

---

[3]    It has been reported to the Court that as of October 2,
2019, Patrolmen Robert Shinn, Edward White, Andrew Byrd, , Wayne
Davis, Thomas Stewart, II, David Geibel, ,Jr., Daniel Matthews,
Kenneth Volk, Shaun Myers, Arthur Shinn, and Justin Kreig
retired from the Township Police Department and Patrolmen
Charles Bennett, Michael Bennett and Jason Kreig resigned from
the Township Police Department.

[4]    The parties use "timeclock policy" and "timecard policy"
interchangeably to describe the Township's policies to clock in
and clock out of a scheduled shift.

time on the clock until the start of the
employee's scheduled work time.

Likewise, employees may clock out up to 7
minutes after the end of their scheduled
work time. However, employees shall not
engage in any work during the time after the
end of their shift. In such cases, the
employee will not be compensated for the
time on the clock after the end of the
employee's scheduled work time.

In both cases, an employee will be
compensated for work performed before and
after the employee's scheduled work time
only for actual work (and subject to the
rounding policy). Actual work may only be
performed if overtime has been expressly
approved by the employee's supervisor in
accordance with overtime approval
procedures.  [Emphasis added].

The timeclock policy was incorporated into the CNAs by

reference.

In 2000, before the implementation of the 2010

timeclock policy, the Township had put in place a policy which

required pre and post shift work.  It provided that:

Prior to the start of each shift the officer
assigned to patrol duties and in a vehicle
equipped with MVR [Mobile Vision Recording]
equipment shall determine whether the MVR
equipment is working satisfactorily and
shall bring any problems to the attention of
the shift supervisor.

The policy was updated in 2006:

Prior to the start of each shift the officer
assigned to patrol duties and in a vehicle
equipped with Arbitrator video recording
system shall determine whether the MVR
equipment is working satisfactorily and

> shall bring any problems to the attention of
> the shift supervisor. The functional check
> shall include both audio and video
> components.

Robert Lewandowski, who was the chief of the Police Department
between November of 2007 and July of 2010, testified that at
that time it was "cultural knowledge" that officers were
expected to prepare their vehicle and equipment before the
scheduled start of their shift.

On or about October 31, 2013, Patrolman Hood, one of
the plaintiffs in this case, was injured while walking out of
the police station to set up his vehicle before his shift
started.  Following this incident, the Township Administrator,
Dennis Gonzalez, made inquiries of the Police Department to
determine how and why Patrolman Hood was performing pre-shift
work.  Following the Hood incident, PBA's attorney, Christopher
Gray, also plaintiffs' attorney in this case, emailed the
Township's Labor Counsel on November 8, 2013.  He wrote that
patrol officers will:

> show up for work and clock in at 7:00.  They
> will be in uniform with their equipment belt
> on and will then set up their vehicles after
> 7:00 . . . Officers will not perform any
> work functions prior to or after 7:00 shift
> change.

As noted above, plaintiffs filed their initial
complaint against defendants in this court on October 30, 2014.
On November 5, 2014, the Township changed schedules for patrol

-5-

police officers from twelve to eight-hour shifts.  Two days
later, the police locker room was temporarily unavailable to
officers because of renovations.  On November 7, 2014, Chief
Jantas issued a special order, updating the regulations of the
police department to state:

> No member shall perform, and no Sergeant O/C
> shall permit, any member to perform any
> actual work, or function that maybe
> considered and/or construed to be work
> related prior to the precise starting time
> of any shift or after the precise ending
> time of any shift.

A few days later, on November 10, 2014, the Township issued a
press release after the complaint was filed, calling the lawsuit
"frivolous" and denying any allegations in the complaint.  The
press release stated that, "the residents of Pemberton Township
deserve much better than the nonsense filed by the 33
plaintiffs" and that the Township planned to defend the lawsuit
"vigorously."  The following week, on or about November 13,
2014, the Township filed "internal affairs complaints"[5] against
plaintiffs.  No action was ever taken on these complaints.

III

Defendants first assert that summary judgment should
be granted because plaintiffs failed to file grievances about

---

[5]    The complaint and the summary judgment briefs do not
include an explanation of procedures or statutory basis for
these complaints.

their pay under the procedures provided in the CNAs.  The CNAs specify that a grievance is "a complaint that there has been an improper application, interpretation, or violation of this Agreement or administrative policies and practices."  The CNAs also set forth a process to be followed in order to file a grievance.  Ultimately, if the grievance cannot be resolved, it must be submitted for arbitration.  According to defendants, plaintiffs' complaint is "indisputably related to the interpretation of the CNAs" and should therefore, have been addressed through the outlined grievance and arbitration procedure and, not a FLSA claim filed in court.

Congress enacted the FLSA in 1938 for the purpose of rectifying labor conditions which were "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  See 29 U.S.C. § 202.  As a result, the FLSA was designed to give specific protections to individual workers and to ensure that each employee covered by the Act would receive "a fair day's pay for a fair day's work" and would be protected from "the evil of overwork as well as underpay."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (internal citations and quotations omitted).  The FLSA generally requires employers to pay overtime compensation after an employee works more than 40 hours in a single week.  See 29 U.S.C. § 207(a)(1).

Plaintiffs contend that the FLSA allows them to file their complaint directly in federal court because the "FLSA trumps collective bargaining agreements."  According to plaintiffs, the "arbitration process would fail to properly redress [their] concerns" and arbitration of the issues raised would be "futile" since an arbitrator cannot strike any provisions of a contract or award counsel fees.

The FLSA provides "minimum substantive guarantees to individual workers."  <u>Barrentine</u>, 450 U.S. at 737 (1981).  The Supreme Court has explained that it has:

> frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act.  Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.

<u>Id</u>. at 1444–45 (internal quotations and citations omitted).  Furthermore, the Court stated that "arbitrators very often are powerless to grant the aggrieved employees as broad a range of relief.  Under the FLSA, courts can award actual and liquidated damages, reasonable attorney's fees, and costs."  <u>Id</u>. at 1447.

Defendants' reliance on <u>Vadino v. A. Valey Engineers</u>, 903 F.2d 253 (3d Cir. 1990) is misplaced.  In <u>Vadino</u>, plaintiff brought suit under both the Labor Management Relations Act and the FLSA.  He claimed first that he was paid less than what was

-8-

provided for in the collective bargaining agreement ("CBA").  He
asserted that he was entitled to a journeyman's pay rate under
the CBA but was being paid at the apprentice's rate.  In
addition, he claimed that he was due overtime pay.  The Court of
Appeals held that the rate of pay due to plaintiff was a matter
that must initially be decided pursuant to the terms of the CBA.
His FLSA claim would then be dependent on the resolution of his
rate of pay.  In contrast, the plaintiff patrol officers here do
not dispute their rate of pay, only the issue of overtime.

        The grievance procedure under the CNA does not and
cannot limit plaintiffs' ability to seek redress in federal
court for an FLSA violation.  <u>Barrentine</u>, 450 U.S. at 728.
Accordingly, the motion of defendants for summary judgment for
failure to arbitrate under the grievance procedures of the CNAs
will be denied.

IV

        Next, defendants assert that summary judgment should
be granted on the merits as to plaintiffs' claim for violation
of the FLSA.  Defendants argue that:  (1) the Township's 2010
timeclock policy against pre and post shift work meets FLSA
requirements; and (2) the pre-2010 policies requiring such work
are irrelevant to the FLSA claims.  Plaintiffs counter that the
Police Department's implementation of the timeclock policy
violated the FLSA.  According to plaintiffs, superiors at the

-9-

police department were aware that officers were engaging in pre and post shift work and deliberately disregarded the timeclock policy.

The FLSA requires that unless exempted, an employee who works "a workweek longer than forty hours" must be paid at least one and one-half times the employee's regular rate for the work performed over forty hours.  See 29 U.S.C. § 207.  An employee who is not paid for this excess time may bring suit under the FLSA.  See 29 U.S.C. § 216(b).  Significantly, the Department of Labor regulations provide that, "[w]ork not requested but suffered or permitted is work time."  See 29 C.F.R. § 785.11.  If the employer "knows or has reason to believe that the work is being performed, [the employer] must count the time as hours worked."  See 29 C.F.R. § 785.12.  The regulations also state that:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

See 29 C.F.R. § 785.13.

Plaintiffs maintain that the Township and the leaders at the Police Department were aware that officers were doing pre and post shift work from November 2011 through October 2014 and

intentionally disregarded the 2010 timeclock policy which prohibited such pre and post shift work.  Robert Lewandowski, who was the Chief of the Police Department between November of 2007 and July of 2010, testified that it was "cultural knowledge" that officers were expected to prepare their vehicle and equipment before the scheduled start of their shift.  Even after the timeclock policy was implemented in June 2010, plaintiffs have testified that Chief Lewandowski and Chief Jantas were aware of and encouraged officers to disregard the timeclock policy during their respective time as Chiefs.  Two plaintiffs have testified that officers were told to clock in within seven minutes of their scheduled shift and to ready their vehicles before the start of their shift.  Plaintiff Michael Geibel testified that David Jantas, who was Police Chief since July 2010, was specifically aware that officers were doing pre and post shift work.  According to Geibel, on one occasion, when discussing pre and post shift work, Jantas told him: "they [the Township] can make the policies, but I run the day-to-day operations and we are going to do what we have to do to make it work."

In contrast, defendants have provided evidence that they were not aware of and did not condone pre and post shift work.  Chief Jantas testified that prior to the Hood incident, he was not "aware of any practice or efforts by officers that

-11-

did any work prior to the start of their work."  He also testified that he "was never put under undue pressure to be in early" from his superiors when he first began working in 1994. Lt. Bogdanowitz also testified that, "officers are not mandated in any way to perform duty off the clock."  Similarly, when asked at his deposition whether he was aware of any claim that officers were working prior to the start of their scheduled shift, Dennis Gonzalez, the Township Administrator, testified that he "was not aware" of anything of this sort.

After Patrolman Hood's accident on October 31, 2013, Gonzalez investigated the matter and informed Chief Jantas that if officers were coming in early, that practice had to "absolutely stop."  Gonzalez contends that it was not until Patrolman Hood's accident that he first became aware that some officers were doing pre and post shift work and "took immediate action to investigate."  He directed Chief Jantas to "explicitly prohibit" others from violating the policy.

In sum, there is evidence that patrol officers were doing pre and post shift work without extra pay during the period of November 2011 through October 2014.  The testimony is conflicting on the crucial question of whether the Township knew or had reason to believe that this work was being performed up through November 8, 2013.  Simply because such work was prohibited on paper or not mandated does not answer that

-12-

question.  Genuine disputes of material fact exist to whether
the Township knew about or had reason to believe that pre and
post shift work was occurring from 2011 through November 8,
2013, despite a policy to the contrary.  See 29 C.F.R. § 785.12.

As noted above, on November 8, 2013, shortly after
Hood's accident, Christopher Gray, the attorney for the PBA,
informed the Township that officers would not be doing any pre
or post shift work thereafter.  Plaintiffs point to no evidence
that the Township knew or had reason to believe that officers
were continuing to perform work pre and post shift after the
Union's attorney told the Township that such work would not take
place.[6]

Accordingly, the motion of defendants for summary
judgment on the FLSA claim under Rule 56 of the Federal Rules of
Civil Procedure will be denied for any claim of damages on or
before November 8, 2013 but granted for any claim of damages
after November 8, 2013.

---

[6]    Our Court of Appeals has observed that, "[j]udges are not
like pigs, hunting for truffles buried in briefs." United
States v. Starnes, 583 F.3d 196, 216 (3d Cir. 2009)
(quoting United States v. Dunkel, 927 F.2d 955, 956 (7th
Cir.1991) (internal quotation marks omitted)).  If additional
factual support for plaintiffs' claim exists in the record, it
was incumbent upon them to direct the Court's attention to those
facts.

V

Finally, plaintiffs claim that defendants retaliated
against them for filing their initial complaint under the FLSA
in this court on October 30, 2014.  Where there is no direct
evidence of retaliation, as here, claims alleging retaliation
are analyzed under the McDonnell Douglas burden-shifting
framework.  Cononie v. Allegheny Gen. Hosp., 29 Fed. Appx. 94,
95 (3d Cir. 2002).  Under this framework, plaintiffs must first
establish that:  (1) they engaged in a protected activity; (2)
the employer took an adverse employment action against them; and
(3) there was a causal connection between their participation in
the protected activity and the adverse employment action.  Young
v. City of Phila. Police Dep't, 651 F. App'x 90, 95 (3d Cir.
2016).

If plaintiffs succeed in making out a prima facie
case, the burden of production then shifts to defendants to come
forward with a legitimate, nondiscriminatory reason for the
alleged retaliatory conduct.  See Scheidemantle v. Slippery Rock
Univ., 470 F.3d 535, 539 (3d Cir. 2006).  If defendants are able
to provide such a reason, the burden of production shifts back
to plaintiffs to produce evidence that the proffered reason is
merely a pretext for actual discrimination.  See Fuentes v.
Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994) (citing St. Mary's
Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993)).  At all

-14-

times the ultimate burden of persuasion rests with the plaintiffs.  See id. at 763 (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. at 253, 254, 256 (1981)).

Plaintiffs allege that defendants retaliated against them for filing their initial complaint on October 30, 2014 by: (1) changing patrol shifts for officers from twelve-hours to eight-hours; (2) removing access to their locker room for a period of time; (3) filing internal complaints against them; and (4) issuing a "misstatement of fact press release."  Defendants do not challenge plaintiffs with respect to the prima facie case.  Instead defendants maintain that there were legitimate business purposes for their actions.

Defendants rely on undisputed evidence that the change from a twelve to eight-hour shift was within the authority of the Township.  Such a change had been part of an ongoing policy discussion that had contemplated such a move since 2009.  While the twelve-hour shift had been negotiated by the PBA, Section VI of the CNA in effect at the time provides that work schedules would be at the "Township's discretion."  The CNA further states, in relevant part, that:

> The Township herby retains and reserves unto
> itself, without limitations, all powers,
> rights . . . [t]o the executive management
> and administrative control of the Township
> Governments and its properties and
> facilities and the activities of its
> employees.

The mayor asked Chief Jantas to conduct research and look into changing patrol schedules to save money in overtime costs. According to the record, the change in shift hours was associated with "manpower" and "feasibility" issues with the Police Department.  Plaintiffs have offered no contrary evidence.

Defendants here presented evidence that access to the "locker room was never actually removed," but temporarily suspended for renovations.  The mayor testified that it was done to "eliminat[e] extraneous access" and to stop "officers [from] com[ing] in whenever they wanted to."  Again, this evidence is undisputed.

Defendants also claim that the "internal affairs complaints"[7] were "filed in order to address ongoing policy violations, not in retaliation to plaintiffs' complaint." According to defendants, the Township does not have the authority to compel officers to follow its timeclock policy. The internal complaints were an attempt to resolve this issue and the "best" avenue to "force" the Police Chief to conduct an

---

[7]    As noted above, the complaint and the summary judgment briefs do not include an explanation of procedures under which these complaints were filed.  Dennis Gonzalez testified that the complaints were filed "under the internal affairs guidelines," but there is no further description of the "internal affairs complaints."

investigation into the pre and post shift work practice.  In any event, no action was taken against plaintiffs as a result of the internal affairs complaints and plaintiffs did not suffer any adverse employment action.  Plaintiffs offer no evidence to the contrary or show that the Township had no legal right to file internal affairs complaints.

Finally, plaintiffs assert that defendants retaliated by circulating "a false press release attacking the plaintiffs in an attempt to smear [them]."  Press releases are legitimate means for local government agencies to share information and updates with their constituents.  The press release here, not surprisingly, presents the defendants' side of the story and includes a statement that the "frivolous lawsuit shall be defended vigorously."  While it is strongly worded, it is clearly not retaliatory conduct.

If defendants are able to provide a legitimate business reason for the alleged retaliatory actions, then the burden of production shifts back to plaintiffs to produce evidence that the proffered reason is merely a pretext for actual discrimination.  See Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994).  To show pretext, plaintiffs must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

-17-

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. <u>Id</u>. at 764.

Plaintiffs have failed to produce any evidence to create a genuine dispute of material fact regarding whether the reasons offered by defendants for the alleged retaliatory conduct were pretextual.  Plaintiffs claim that each alleged retaliatory action "was done for the purpose to punish and attempt to discredit the [p]laintiffs merely for filing the complaint."  However, based on the evidence provided, no reasonable factfinder could conclude that the alleged actions were taken for any reason other than the legitimate business reasons presented by the defendants or that plaintiffs suffered any damages as a result.

Accordingly, the Court will grant the motion of defendants for summary judgment as to plaintiffs' claim for retaliation under the FLSA.